IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CONTINENTAL INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 3:13-cv-4150-M |
| v. | § | |
| | § | |
| DAVID DAWSON, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following Motions filed by Defendant: Motion to Dismiss for Lack of Subject Matter Jurisdiction [Dkt. No. 23], the Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. No. 23], the Motion to Dismiss for Improper Venue [Dkt. No. 23], the Motion for Summary Judgment [Dkt. No. 23], and the Motion to Transfer Venue [Dkt. No. 26]. Plaintiff has filed a Cross-Motion for Summary Judgment [Dkt. No. 50]. For the reasons provided herein, the Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED**. The Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**. The Motion to Dismiss for Improper Venue is **DENIED**. Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Cross-Motion for Summary Judgment is **DENIED**. The Motion to Transfer Venue is **DENIED** as moot.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This action was commenced by Continental Insurance Company ("Continental"), as assignee of Aetna Life Insurance Company, of Hartford, Connecticut ("Aetna"), against David Dawson ("Dawson"). Continental is a foreign insurance corporation doing business in Texas,

1

and is incorporated under the laws of Pennsylvania, with its principal place of business in Illinois.[1]  Dawson resides in Colorado.[2]

On November 16, 2007, Dawson was seriously burned in a dangerously hot shower while working for Hill International, Inc. ("Hill") in Baghdad, Iraq.[3]  Fluor Intercontinental, Inc. ("Fluor") managed Dawson's living quarters in Iraq.[4]  Dawson subsequently filed a lawsuit against Fluor in the 134th Judicial District Court of Dallas County, Texas ("the Fluor case"), where Dawson secured a $20 million jury verdict and judgment.[5]  While the Fluor case was pending before the Dallas Court of Appeals, Dawson entered into a confidential settlement with Fluor.[6]  Dawson stipulated at this Court's January 14, 2015 hearing that his settlement with Fluor exceeded $2 million.[7]

Continental was the worker's compensation carrier for Hill, and was required to pay for Dawson's medical expenses and indemnity under the Longshore and Harbor Workers' Compensation Act.[8]  Aetna was Dawson's group health carrier through Hill.[9]  The expenses for Dawson's overseas treatment were billed to Aetna, not Continental, and Aetna made $282,774.51 in payments to overseas medical providers on behalf of Dawson for the period between November 18, 2007 and January 24, 2008.[10]

---

[1] Dkt. No. 14 ¶ 1.1 (First Amended Complaint).
[2] *Id.*
[3] *Id.* ¶ 4.1.
[4] *Id.*
[5] *Id.*
[6] Dkt. No. 44 (Notice of Changed Circumstances).
[7] Hr'g Tr. at 11:25–12:19.
[8] Dkt. No. 14 ¶ 4.3.  The LHWCA is codified at 33 U.S.C. § 901, *et seq.*
[9] Def. App. 1 (Aetna's Motion for Summary Decision in 2012 proceedings before ALJ).
[10] Def. App. 16 (Aetna Health Plans); Def. App. 50 (Aetna's Claim for Medical Benefits and Request for Informal Conference).

Continental alleges the payments by Aetna triggered the subrogation and/or reimbursement provisions of the Hill International, Inc. Employee Benefit Plan ("the Plan"), which provided Aetna and the Plan first money right of recovery pursuant to the equitable "made whole" or "common fund" doctrines.[11]  Alternatively, Continental alleges that Aetna had an equitable right of subrogation and/or reimbursement.[12]  Continental claims that Aetna, as a fiduciary of the Plan, and now Continental, as a derivative fiduciary of the Plan, have exercised their reasonable discretion to seek subrogation and to demand reimbursement of $282,774.51 from Dawson's settlement with Fluor.[13]

As a means of resolving several disputed issues and avoiding further litigation, Dawson, Hill, and Continental submitted a proposed settlement agreement to the Department of Labor's Office of Workers' Compensation Programs (OWCP), pursuant to Section 8(i) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 908(i), ("the 2010 8(i) settlement").[14]  The OWCP approved the 2010 8(i) settlement on May 24, 2010.[15]  The relevant provisions of that agreement, Sections 1 and 2, are as follows:

1. Defendants will pay the claimant a lump sum of $260,759.68 in return for a complete discharge of their liability for compensation and past medical care arising out of the subject injury.  Of this sum, $210,759.68 is allocated to indemnity and $50,000 is allocated to medical care and expenses.[16]

---

[11] Dkt. No. 14 ¶ 4.2.

[12] *Id.*

[13] *Id.*

[14] *Id.* ¶ 4.3.  A settlement reached under Section 908(i) is commonly referred to as a "Section 8(i) settlement."  *Cooper v. Int'l Offshore Servs.*, L.L.C., 390 F. App'x 347, 348 (5th Cir. Aug. 3, 2010).

[15] Dkt. No. 14 ¶ 4.3.

[16] Def. App. 40 ¶ 1 (2010 8(i) settlement).  Neither Continental nor Dawson argue that Hill is liable for any portion of the Aetna payments.  Thus, for the purposes of this matter, "Defendants," as recited in the 2010 8(i) settlement, refers only to Continental.

2.  Defendants further agree to provide payment for any reasonable and necessary medical treatment related to the injury of November 16, 2007 that should arise prior to the date of approval of this agreement.[17]

Continental also asserted a lien on any recovery by Dawson in the Fluor case, with the amount depending on Dawson's recovery.[18]

Continental and Aetna filed separate interventions in the Fluor case, and Dawson moved to strike them both.[19]  Before ruling on Dawson's motion, the state court severed Aetna and Continental's interventions into separate cause numbers.[20]  On October 1, 2012, Dawson executed an agreed final judgment regarding Continental's lien rights for benefits paid directly by Continental to or on behalf of Dawson, totaling $388,457.67.[21]

On May 9, 2012, Aetna filed a claim with the OWCP against Continental for reimbursement of the medical benefits it paid in 2007 on behalf of Dawson.[22]  Aetna noted that it was not a party to the 2010 8(i) settlement between Dawson and Continental, and that Continental had agreed in Section 2 of its 2010 8(i) settlement to pay for all medical treatment before the 2010 8(i) agreement was approved, including the treatment paid for by Aetna.[23]

On April 23, 2013, the OWCP approved an 8(i) settlement between Hill, Aetna, and Continental ("the 2013 8(i) settlement"), which provided that Aetna would assign the full value of its claim to Continental, agree to assist Continental in recovering that amount from Dawson, and completely discharge Continental of liability for past medical care arising out of Dawson's

---

[17] *Id.* ¶ 2.

[18] *Id.* ¶ 3.  Section 3 provided that Continental would recover the full value of its lien, $388,457.67, if Dawson recovered more than $2 million in the Fluor case.

[19] Dkt. No. 14 ¶ 4.4.

[20] *Id.*

[21] *Id.*  Dawson has since paid Continental the $388,457.67 owed pursuant to the lien established in Section 3 of the 2010 8(i) settlement and the agreed final judgment.  Hr'g Tr. at 12:17–13:11.

[22] Def. App. 50 (Aetna's Claim for Medical Benefits and Request for Informal Conference).

[23] *Id.*

injury, all in exchange for Continental paying Aetna a lump settlement sum of $219,000.[24] Continental contends that Dawson also participated in the proceeding between Aetna and Continental, but the extent of his participation is disputed.[25]

Continental later sought a stipulation from Dawson regarding Continental's subrogation interest that had been assigned from Aetna.[26] Dawson refused and sent a letter to Continental threatening a declaratory action against Continental for breach of contract, and pursuit of bad faith remedies.[27] Dawson's counsel alleged that Continental's initial failure to reimburse Aetna was a breach of the 2010 8(i) settlement, which Dawson argues required Continental to "provide payment for any reasonable and necessary medical treatment related to the injury of November 16, 2007 that should arise prior to the date of the approval of the agreement."[28]

On October 14, 2013, Continental filed suit against Dawson in this Court, alleging claims under ERISA as a derivative fiduciary of the Plan, seeking to enforce Aetna's subrogation and reimbursement rights under the Plan by bringing a claim under § 502 of ERISA, declaratory relief that Continental had an equitable lien on Dawson's recovery in the Fluor suit, and a permanent injunction prohibiting Dawson from retaining any recovery from the Fluor case without reimbursing Continental for the amounts assigned to it by Aetna.[29]

On December 30, 2013, true to his word, Dawson filed his own action against Continental in the District of Colorado, asserting various state-law claims, including breach of

---

[24] Def. App. 102 ¶¶ 1-3 (2013 8(i) settlement).
[25] *See* Def. App. 81 (May 24, 2012 letter from counsel for Aetna to claims examiner).
[26] Dkt. No. 14 ¶ 4.6.
[27] *Id.*
[28] *Id.* Def. App. 40 ¶ 2.
[29] Dkt. No. 1.

contract and violation of the covenant of good faith and fair dealing.[30]  Dawson later moved to amend his Complaint to dismiss those claims and substitute new claims for abuse of process and malicious prosecution, as part of an alleged civil conspiracy.[31]  On January 8, 2015, the District of Colorado denied Dawson's Motion for Leave to Amend his Complaint, and dismissed his suit in its entirety.[32]

Here, Dawson seeks to dismiss under Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6), and alternatively to transfer venue to the District of Colorado, where his former action against Continental was pending.[33]  Thereafter, Continental filed its First Amended Complaint, in which it brought an alternative allegation against Dawson for breach of contract.[34]  Continental responded to each Motion and the Alternative Motion to Transfer Venue.[35]  On November 25, 2014, Dawson filed a Notice of Changed Circumstances, advising that he had entered into a confidential settlement with Fluor.[36]

On January 14, 2015, this Court held a hearing on all pending Motions, at which the Court converted Dawson's Motion to Dismiss Under Rule 12(b)(6) into a Motion for Summary Judgment.[37]  *See Exxon Corp. v. Maryland Cas. Co.*, 599 F.2d 659, 661 (5th Cir. 1979).[38]  The

---

[30] *See Dawson v. Continental Ins. Co.*, NO. 13-CV-03511-PAB-KMT, 2015 WL 128158, at *1 (D. Colo. Jan. 8, 2015).

[31] *Id.* at 2.

[32] *Id.* at 11.

[33] Dkt. No. 23; Dkt. No. 26.

[34] Dkt. No. 14.

[35] Dawson informed the Court that Continental's First Amended Complaint had no impact on the arguments in his Motions to Dismiss and his Alternative Motion to Transfer Venue.  Dkt. No. 19.

[36] Dkt. No. 44.

[37] Hr'g Tr. at 32:11–14.

[38] In converting the Motion to Dismiss into a Motion for Summary Judgment, the Court is considering all of the evidence in the record, and particularly the 2010 8(i) settlement between Dawson and Continental.  *See* Dkt. No. 25; Dkt. No. 34; Dkt. No. 40; Dkt. No. 52; Def. App. 36–44 (2010 8(i) settlement).

Court permitted Continental to supplement its briefing and file a Cross-Motion for Summary

Judgment, which it did on January 28, 2015.[39]  On February 23, 2015, Dawson filed a Response

to Continental's Cross-Motion for Summary Judgment.[40]

## II.    ANALYSIS

### I.    Dawson's Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### 1.  Legal Standard

A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must

be considered by the court before any other challenge because "the court must find jurisdiction

before determining the validity of a claim."  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169,

172 (5th Cir. 1994).  In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on

"1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint

supplemented by undisputed facts and the court's resolution of disputed facts."  *Kennard v.*

*Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601, 605 (N.D. Tex. 2006) (citing *MCG, Inc. v. Great*

*Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir. 1990)).  On matters involving

jurisdiction, the district court may consider evidence outside the pleadings and resolve factual

disputes.  *In re The Complaint of RLB Contracting, Inc., as Owner of the Dredge "Jonathan*

*King Boyd" and Its Engine, Tackle, and Gear for Exoneration or Limitation of Liab.*, 773 F.3d

596, 601 (5th Cir. 2014).  Thus, here, the Court is permitted to analyze the Amended Complaint

and undisputed facts in the record, and to resolve disputed facts.  *See id.*

---

[39] Dkt. No. 50.
[40] Dkt. No. 55.

### 2.  Jurisdiction Under ERISA

The Court holds that it has subject matter jurisdiction under ERISA.  In

*ACS Recovery Services, Inc. v. Griffin*, the Fifth Circuit held that a failure to state a claim under

ERISA does not mean that a court lacks subject matter jurisdiction under ERISA.  723 F.3d 518,

523 (5th Cir. 2013).  Subject matter jurisdiction is not implicated unless the claim is "so

insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise

completely devoid of merit as not to involve a federal controversy."  *Id.* (citing *Oneida Indian*

*Nation of N.Y. v. Cnty. of Oneida*, 414 U.S. 661, 666 (1974)) (quotation marks and citations

omitted).  The Court in *ACS Recovery* further noted that its holding was consistent with "at least

five other circuits," which had "held that whether a claim for equitable relief under ERISA

§ 502(a)(3) has been stated is within federal courts' jurisdiction irrespective of the claim's

ultimate merit."  *Id.*  Finally, the Court in *ACS Recovery* supported its holding by observing that

courts are granted exclusive jurisdiction under ERISA that is *separate and apart* from causes of

action made available by ERISA.  *Id.* (citing 29 U.S.C. § 1132(e)).

Here, Continental seeks enforcement against Dawson of the subrogation and

reimbursement terms of the Plan, and equitable relief, pursuant to ERISA § 502(a)(3).[41]  *See* 29

U.S.C. § 1132(a)(3).  Continental supports its claim for relief with the following allegations:  (1)

Dawson was an employee of Hill when he was injured; (2) Hill had an employee benefit plan in

place, i.e. the Plan; (3) the Plan was governed by ERISA; (4) the benefits under the Plan were

funded under a policy of insurance secured by the Plan from Aetna, and the premiums were

funded in part by Hill and in part by employee contributions;[42] (5) Aetna paid $282,774 in

---

[41] Dkt. No. 14 ¶ 5.1.
[42] Pl. App. 1 (Aff. of William H. Dangler, Senior Vice President and General Counsel of Hill).

benefits on behalf of the Plan, and these payments were for treatment in 2007 after Dawson's injury;[43] (6) the Plan provided for first money rights of subrogation and reimbursement from third party liability for the accident;[44] (7) Aetna sent a demand letter to Dawson on January 7, 2011;[45] (8) Aetna sought to intervene in the Fluor suit on March 26, 2012, which Dawson opposed;[46] (9) Aetna assigned its rights to Continental;[47] and (10) as a result, Continental is a fiduciary or derivative fiduciary under ERISA. *See Louisiana Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529, 537 (5th Cir. 2006) (holding that an assignee has derivative standing to enforce claims under ERISA § 502). The foregoing allegations, together with the evidence presented by the parties, are sufficient to establish subject matter jurisdiction under ERISA. *See ACS Recovery*, 723 F.3d at 523.

Dawson argues that the 2010 8(i) settlement executed by Dawson and Continental precludes Continental's claim. Dawson also asserts that Aetna's claim is valueless because Aetna did not plan to pursue reimbursement from Dawson. However, these arguments go to the merits of Continental's claim, not to the jurisdiction of this Court. *See ACS Recovery*, 723 F.3d at 523.

Dawson alternatively argues that this Court lacks jurisdiction because only the OWCP, at the Department of Labor, can interpret the 2010 8(i) settlement. However, at the Court's January 14, 2015 hearing, Continental argued, and Dawson did not dispute, that the OWCP lacks jurisdiction to interpret the 2010 8(i) settlement because an aggrieved party was required to file

---

[43] Def. App. 13–32 (Aetna's Ex. to Mot. in 2012 OWCP proceedings (Dawson's medicals)).
[44] Pl. App. 62–63 (The Plan, "Subrogation and Right of Reimbursement").
[45] Def. App. 34 (January 7, 2011 demand letter from Aetna to Dawson).
[46] Pl. App. 81–83 (Aetna's Orig. Plea in Intervention).
[47] Def. App. 102 (2013 8(i) settlement ¶ 2).

an appeal within 180 days after the approval of the settlement.[48]  Neither party did so.  Dawson

has cited no persuasive authority that the OWCP has continuing jurisdiction, let alone sole

jurisdiction.[49]  The Court finds that it has subject matter jurisdiction to interpret the 2010 8(i)

settlement, which is Dawson's affirmative defense to Continental's ERISA claim and alternative

breach of contract claim, over which this Court has diversity jurisdiction, as is discussed below.

### 3.  Diversity Jurisdiction

Alternatively and/or supplemental to having subject matter jurisdiction under ERISA, the

Court has diversity jurisdiction over Continental's breach of contract claim that Dawson

breached his subrogation agreement with Aetna, which was then assigned to Continental.  It is

undisputed by Dawson that Continental is incorporated under the laws of Pennsylvania, and has

its principal place of business in Illinois; that Dawson is a citizen of Colorado; and that the

amount in controversy is $282,774.51.  Thus, diversity jurisdiction exists.  *See* 28 U.S.C. §

1332(a)(1).

## II.    Dawson's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

### 1.  Legal Standard

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident

defendant if the long-arm statute of the forum confers personal jurisdiction over that defendant,

and the exercise of such jurisdiction by the forum is consistent with due process.  *Network

Multifamily Sec. Corp. v. Homes for Am. Holdings, Inc.*, No. 3:10-CV-01981-M, 2011 WL

2412966, at *1 (N.D. Tex. June 10, 2011).  "The Texas long-arm statute reaches to the limits of

---

[48] Hr'g Tr. at 19:19 –20; *see also* 20 C.F.R. § 501.3(e).

[49] At the Court's January 14, 2015 hearing, Dawson referred to *Oceanic Butler, Inc. v. Nordahl*,
842 F.2d 773, 778 (5th Cir. 1988).  Hr'g Tr. at 16:11–14.  In that case, the Fifth Circuit held that
an employer and insurer could not withdraw from an 8(i) settlement *before* it was approved by
the OWCP.  *Id.*  Here, the 2010 8(i) settlement was approved on May 24, 2010.  Def. App. 36.

due process, and therefore a court need only determine whether the exercise of personal

jurisdiction over the moving defendant is consistent with due process." *Id.* (citing *Guardian*

*Royal Exch. Assurance, Ltd. v. English China Clays P .L.C.,* 815 S.W.2d 223, 226 (Tex. 1991)).

A court may exercise personal jurisdiction over a nonresident defendant when (1) that defendant

has purposefully availed itself of the benefits and protections of the forum state by establishing

"minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant

does not offend "traditional notions of fair play and substantial justice." *See Burger King v.*

*Rudzewicz,* 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985); *Panda Brandywine*

*Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).

When personal jurisdiction is challenged, and the court does not conduct an evidentiary

hearing, the plaintiff must make a prima facie showing of jurisdiction, with the court resolving

all disputed facts in favor of jurisdiction. *See Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465,

469 (5th Cir. 2006). In determining whether the plaintiff has made a prima facie showing, the

court may consider any affidavits, interrogatories, deposition testimony, or any other recognized

discovery method, but not conclusory allegations. *See Thompson v. Chrysler Motors Corp.*, 755

F.2d 1162, 1165 (5th Cir. 1985). Furthermore, "uncontroverted allegations in the plaintiff's

complaint must be taken as true, and conflicts between the facts contained in the parties'

affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima*

*facie* case for personal jurisdiction exists." *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th

Cir.1989) (citation and internal quotation marks omitted).

There are two categories of personal jurisdiction—general and specific. *Network*

*Multifamily Sec. Corp.*, 2011 WL 2412966, at *2. A court has general jurisdiction when a

defendant's contacts with the forum state are "continuous and systematic," permitting the court

to exercise jurisdiction over that defendant for claims unrelated to the defendant's connections to

the state. *Mink v. AAAA Dev.*, 190 F.3d 333, 336 (5th Cir. 1999). On the other hand, a court has

specific jurisdiction if the plaintiff's claims arise out of or are related to the defendant's contacts

with the forum state. *See Burger King*, 471 U.S. at 472 (1985).

### A. Specific Jurisdiction

Here, Continental has established that this Court has specific jurisdiction over Dawson.

Under Texas law, "[v]oluntarily filing a lawsuit in a jurisdiction is a purposeful availment of the

jurisdiction's facilities and can subject a party to personal jurisdiction in another lawsuit when

the lawsuits arise from the same general transaction." *Int'l Transactions, Ltd. v. Embotelladora

Agral Regionmontana SA de CV*, 277 F. Supp. 2d 654, 667–68 (N.D. Tex. 2002) (citations

omitted). When a defendant chooses to litigate in a particular forum, he cannot then argue it

would be burdensome to litigate in that same forum in another, related case. *Hess v. Bumbo Int'l

Trust*, 954 F. Supp. 2d 590, 597 (S.D. Tex. 2013) (Costa, J.) (citing *id.*). As the Ninth Circuit has

observed, "*Embotelladora* rests primarily on the conclusion that there is nothing unfair, or

violative of due process, about requiring a party that has affirmatively sought the aid of [Texas]

courts with regard to a particular transaction to submit to jurisdiction in the same forum as a

defendant with regard to the same transaction with the same party." *Dow Chem. Co. v.

Calderon*, 422 F.3d 827, 835 (9th Cir. 2005).

In *Walden v. Fiore*, the Supreme Court, reversing the Ninth Circuit, held that the proper

lens to look through when conducting a specific jurisdictional analysis is "whether the

*defendant's* actions connect him to the *forum*." 134 S. Ct. 1115, 1124 (2014) (emphasis in

original). Here, Dawson instituted a personal injury lawsuit against Fluor in state court in Texas.

The settlement from that lawsuit is allegedly subject to Aetna's subrogation and/or

reimbursement interest now claimed by Continental.  The injury allegedly suffered by Continental stems directly from the lawsuit Dawson filed in Texas, where Dawson refused to stipulate to Continental sharing in the recovery.[50]  *See Calder v. Jones*, 465 U.S. 783.

Dawson argues that the only link between Dawson and Texas is the Plaintiff, Continental, and that therefore, Continental makes the same mistake highlighted in *Walden*.  In fact, Dawson was engaged in a lawsuit as a plaintiff in Texas when Continental filed this action.  The Fluor case was commenced without reference to Continental.  This case is easily distinguishable from the Ninth Circuit's analysis in *Walden*, about which the Supreme Court criticized the Court of Appeals for "look[ing] [at] the petitioner's *knowledge* of respondents' strong forum connection," rather than "assessing the petitioner's *own* contacts with [the forum]."  *Walden*, 134 S. Ct. at 1124.  Had Continental not intervened in the Fluor suit, nor sought a stipulation from Dawson regarding the Aetna lien, Dawson still would have allegedly breached the Plan and its subrogation and reimbursement terms by not assisting Aetna in recovering its subrogation interest from Fluor in Texas, and by not repaying Aetna for the medical expenses Aetna paid on behalf of Dawson.  This Court has specific jurisdiction over Dawson based on his *own* contacts, irrespective of what Continental has done to protect its rights under the Plan.

---

[50] Dawson argues that he could only bring his suit against Fluor in Texas because Fluor is a Texas resident, and the tort at issue was committed in Iraq.  *See* Def. Mot. to Dismiss at 18; Def. App. 92.  Therefore, Dawson argues he was not forum shopping by commencing the Fluor case in Texas.  *See id.*  However, this Court does not find the "nucleus of operative facts" between the Fluor case and this matter to be "worlds apart," as Dawson suggests, and instead holds that the specific jurisdictional analysis in *Embotelladora* is sufficiently analogous to the facts here. *See* Def. Mot. to Dismiss at 19.  The Court does not base its finding of specific jurisdiction on the mere fact of the Fluor case being in Texas, but rather, on Dawson's opposing Aetna's intervention in the Fluor case and moving to strike it.  Had Dawson not so moved, Aetna would have been a proper party in the Fluor case.

Moreover, this suit and the Fluor case derive from a related set of facts—but for the Fluor case and Dawson's recovery in that suit, Continental would have no claim. *See Int'l Transactions*, 277 F. Supp. 2d at 668. The jury in the Fluor case awarded Dawson $355,047 for "medical care expenses paid or incurred in the past on behalf of Dawson." Dawson's settlement in the Fluor case is the reason for this action.

### III.   Dawson's Rule 12(b)(3) Motion to Dismiss for Improper Venue

#### 1.   Legal Standard

Under Rule 12(b)(3), once a defendant has objected to venue, the burden shifts to the plaintiff to establish that venue is proper as to each defendant and each claim. *Nuttall v. Juarez,* 984 F. Supp. 2d 637, 642 (N.D. Tex. 2013); *Emelike v. L–3 Comm. Corp.,* No. 3:12–CV–2470–M, 2013 WL 1890289, at *1 (N.D. Tex. May 7, 2013). The court accepts as true all of the allegations in the plaintiff's complaint and resolves all factual conflicts in the plaintiff's favor. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.,* 240 F. App'x 612, 615 (5th Cir. 2007) (citing *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1138 (9th Cir. 2004)). The court may also consider evidence in the record beyond the facts alleged in the complaint and its proper attachments. *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte,* 536 F.3d 439, 449 (5th Cir. 2008).

#### 2.   Analysis

Continental alleges that venue is proper under Section 501(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), as the district and division where the breach of the terms of the Plan by Dawson took place, and pursuant to 28 U.S.C. § 1391(a)(2), as the district and division in which a substantial part of the events or omissions occurred. The ERISA venue provision is below:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took

14

place, or where a defendant resides or may be found, and process may be served in any
other district where a defendant resides or may be found.  29 U.S.C. § 1132(e)(2).

The relevant portion of the general venue statute is as follows:

(1) a judicial district where any defendant resides, if all defendants reside in the same
State;

(2) a judicial district in which a substantial part of the events or omissions giving rise to
the claim occurred, or a substantial part of property that is the subject of the action is
situated; or,

(3) a judicial district in which any defendant is subject to personal jurisdiction at the time
the action is commenced, if there is no district in which the action may otherwise be
brought.

Continental argues that venue is proper under either venue statute because Dawson is

liable for breach of the Plan by obtaining a monetary recovery arising out of the Fluor case

without reimbursing Aetna, the first-money interest of the Plan.  That recovery was obtained in

Dallas County, Texas.  Moreover, as of the time his suit was pending before the Dallas Court of

Appeals, Continental sought a constructive trust on property in Texas, where Fluor's principal

office is located.  These allegations are sufficient to establish venue in the Northern District of

Texas.  Dawson argues that his actions in the Fluor case, including striking the intervention, were

defensive and undertaken to protect the 2010 8(i) settlement agreement with Continental.

However, defensive or not, if there was a breach, either under ERISA or the Plan as a contract, it

occurred in Texas.

**IV.     Continental and Dawson's Cross-Motions for Summary Judgment**

Dawson moves for summary judgment, arguing that Continental has no right to collect

the amounts paid by Aetna on behalf of Dawson.  Continental also moves for summary

judgment, arguing that it is the proper assignee of a valid claim of $282,774.51 on the settlement

15

funds Dawson received from Fluor.[51]  The $282,774.51 is the amount paid by Aetna on behalf of

Dawson for the overseas medical treatment he received in November and December 2007.[52]  The

parties appear to agree that the 2010 8(i) settlement is the crux of the dispute, and the specific

issue before the Court is whether that settlement precludes Continental from recovering any

further amount paid for Dawson's medical treatment.

### 1.  Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 248 (1986).  In ruling on a summary judgment motion, the Court will not consider

"[f]actual disputes that are irrelevant and unnecessary." *Id.*  Once the movant carries its initial

burden, the burden shifts to the non-movant to show that summary judgment is improper, by

designating specific facts beyond the pleadings that prove the existence of a genuine issue of

material fact. *See* Fed. R. Civ. P. 56(a); *Anderson,* 477 U.S. at 250.  If the nonmoving party fails

to make a showing sufficient to establish the existence of an element essential to its case and on

which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

---

[51] $282,774.51 represents the amount of money Aetna paid on behalf of Dawson for his overseas medical treatment.  That treatment was provided from November 2007 through January 2008. *See* Def. App. 16 (Aetna Health Plans); Def. App. 50 (Aetna's Claim for Medical Benefits and Request for Informal Conference).
[52] Hr'g Tr. at 5:9–19.

### 2.  Analysis

Continental and Dawson dispute whether Section 2 of the 2010 8(i) settlement precludes Continental from recovering on Aetna's claim.  Dawson relies on the 2010 8(i) settlement as an affirmative defense to Continental's ERISA and breach of contract claims.  Should the Court find that the 2010 8(i) settlement precludes Continental from recovering from Dawson, then as a matter of law Continental cannot prevail on either its ERISA claim or its breach of contract claim.  The primary issue before the Court, then, is the interpretation of the 2010 8(i) settlement. The relevant provisions of the 2010 8(i) settlement state:

1.  Defendants will pay the claimant a lump sum of $260,759.68 in return for a complete discharge of their liability for compensation and past medical care arising out of the subject injury.  Of this sum, $210,759.68 is allocated to indemnity and $50,000 is allocated to medical care and expenses.[53]

2.  Defendants further agree to provide payment for any reasonable and necessary medical treatment related to the injury of November 16, 2007 that should arise prior to the date of approval of this agreement.[54]

Continental argues that Section 1 afforded it a complete discharge of liability for Dawson's past medical care, including the $282,774.51 Aetna paid and billed for Dawson's overseas treatment, and that Section 2 only protected Dawson from expenses for any medical treatment that arose in the two weeks between the date the agreement was executed and the date it was approved by the Department of Labor.[55]

Dawson argues that Section 2 makes Continental liable for the Aetna bills because those bills were for medical treatment that arose prior to the date of approval of the 2010 8(i)

---

[53] Def. App. 40 ¶ 1 (2010 8(i) settlement).
[54] *Id.* ¶ 2.
[55] *See* Def. App. 43 (executed May 10, 2010); Def. App. 36 (approved May 24, 2010).

settlement by the Department of Labor—Dawson received overseas treatment in 2007, and the agreement was approved on May 24, 2010.

Although both parties argued at the hearing that the 2010 8(i) settlement is unambiguous, Continental now alternatively argues that the Court may find the agreement ambiguous, and then cure the ambiguity by considering certain parol evidence.[56]

A contract is not ambiguous simply because the parties dispute its meaning. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (citing *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 727 (Tex. 1981)). To be ambiguous, the language of a contract must be susceptible to two or more reasonable interpretations. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). Here, the Court finds that the 2010 8(i) settlement is unambiguous because, as written, it is only susceptible to one reasonable interpretation, which is set forth below. *See* Hr'g Tr. at 23:21–23; Dkt. No. 51 at 16 ("Continental contends that the agreement unambiguously provided for the release of 2007 Aetna bills."); Dkt. No. 55 at 2 ("[B]oth parties from the outset represented that the 2010 Section 8(i) Settlement Agreement is unambiguous.").[57]

---

[56] Neither party substantially briefed what law the Court should apply in interpreting the 2010 8(i) settlement. In his Motion to Transfer Venue, Dawson argued that Colorado law applies to the interpretation of the 2010 8(i) settlement. *See* Dkt. No. 27 at 8. Federal courts sitting in diversity apply the forum state's conflicts-of-law rules to determine what law governs state-law claims. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Texas courts initially decide whether there is a conflict between Texas law and the other potentially applicable law. *See SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Sciences, Inc.*, 128 S.W.3d 304, 314 (Tex. App.—Dallas 2004, no pet.) ("[W]e should first determine if the laws are in conflict. If the result would be the same under the laws of either jurisdiction, there is no need to resolve the choice of law question."). Here, the Court is satisfied that the proper interpretation of the 2010 8(i) settlement would be the same under either Texas or Colorado law. *Compare See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000) *with Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003).

[57] Continental argues that summary judgment would be improper if the Court finds the 2010 8(i) settlement to be ambiguous, because the intent of the parties would be a question of fact. Dkt.

18

In interpreting the 2010 8(i) settlement, the Court must ascertain the intent of the parties, and give that intent effect as it is expressed in the agreement.  *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000).  In doing so, the Court examines and considers the "*entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless."  *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1981) (emphasis in original).  "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."  *Id.* (citation omitted).

The 2010 8(i) settlement expressly describes the parties' intent to "avoid the risks of litigation" and "settle their differences."  *See* Def. App. 40.  Because of the "significant issues in dispute" and the parties' "wish to avoid the hazards, delays, and costs of further litigation," Continental and Dawson entered into the 2010 8(i) settlement.  *Id.*  The parties do not dispute that Continental knew Aetna had paid for Dawson's overseas medical treatment, nor do they dispute that Continental had the primary obligation to pay all medical bills arising from his injury.  *See* Hr'g Tr. at 17:3–9.

The 2010 8(i) settlement is comprised of Sections 1–7, including Sections 1 and 2, the meanings of which are disputed by the parties.  Sections 1 and 2 generally set forth Continental's obligations to Dawson for medical care and indemnity.  *See* Def. App. 40.  Section 3 gave

---

No. 51 at 19.  However, Continental does not make an argument in support of ambiguity, but instead only attempts to controvert Dawson's proposed parol evidence.  *See id.* at 16–18.  Nonetheless, the Court finds the 2010 8(i) settlement to be unambiguous, and therefore, summary judgment is a proper device to dispose of this matter.  *See Holmes v. Graham Mortgage Corp.*, 449 S.W.3d 257, 266 (Tex. App.—Dallas 2014, pet. filed).  Because the agreement is unambiguous, the Court declines to consider either party's proposed parol evidence.  *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996).  ("Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract.").

Continental a lien on Dawson's settlement in the Fluor suit, with the amount of the lien varying

based on the amount of the settlement. *Id.* at 41. For example, Dawson was awarded $2 million

or more in his settlement with Fluor, which allowed Continental to recover the full amount of its

lien, which was $388,457.67.[58] *See* Def. App. 39 ¶ 16, 41 ¶ 3(a). Sections 4 and 5 addressed

attorney's fees—Section 4 provided that Continental's lien on the Fluor settlement would not be

reduced by Dawson's attorney's fees or costs incurred in the Fluor suit, and Section 5 provided

that Continental would pay Dawson's attorney's fees for work before the OWCP. *Id.* Section 6

provided Continental and Hill with a discharge of liability under the Longshore and Harbor

Workers' Compensation Act upon full payment of the lien amount established by Section 3. *Id.*

Section 7 rendered the agreement void in the event of Dawson's death before the 2010 8(i)

settlement was approved by the Department of Labor. *Id.* at 42.

The "Adequacy of the Settlement" section confirms that Continental had paid a total of

$76,688.31 for Dawson's medical care from the date of the injury until the approval of the 2010

8(i) settlement.[59] Def. App. 42. That section also states that Dawson was then unemployed and

did not have a collateral source of health insurance. *Id.* The "Medicare Considerations" section

provided that, if Dawson received any benefits from Medicare or Medicaid, he must resolve any

lien or claim Medicare/Medicaid might have against the Fluor settlement. *Id.* at 43. That section

also provided that Dawson was to indemnify and hold harmless Continental and Hill for any

liens involving Medicare, Medicaid, the IRS, child support, or other any other federal, state, or

local government agencies. *Id.*

---

[58] As already discussed, the parties agree that Dawson has paid Continental the $388,457.67
owed pursuant to Section 3 of the 2010 8(i) settlement agreement.

[59] The Adequacy of Settlement and Medicare Considerations sections follow Sections 1–7, but
are not numbered paragraphs like the preceding sections in the 2010 8(i) settlement.

Thus, the 2010 8(i) settlement was intended to resolve completely the differences between Dawson, Continental, and Hill, including amounts owed to Dawson for past medical care and indemnity.  It is not clear to the Court that the parties even disagree about the intent of the agreement.  Continental's position is essentially that it intended to pay for all of Dawson's past medical care, except that paid by Aetna, and in doing so, to obtain a complete release of liability.  Of course, Dawson disputes this, and there is no evidence of any discussion between Continental and Dawson about how the Aetna claims would be handled.

The Court agrees with Dawson.  The medical expenses paid by Aetna before the execution and approval of the 2010 8(i) settlement were almost four times the amount Continental paid for Dawson's medical care.  *Compare* Def. App. 42 (stating that Hill and Continental paid a total of $76,688.31 for medical care as of the date of the 2010 8(i) settlement) *with* Dkt. No. 14 ¶ 4.1 (stating that Aetna paid $282, 774.51 for Dawson's overseas medical treatment).  Continental does not dispute that it had the primary obligation to pay for Dawson's medical care.  *See* Hr'g Tr. at 17:3–9.  In the absence of any express reference in the 2010 8(i) settlement to the medical care paid for by Aetna, the Court construes the agreement to eliminate Continental's right to recover from Dawson what it already agreed to pay on his behalf in exchange for a broad release in liability.

Dawson argues that Section 2 should be construed as Continental agreeing to pay Aetna because the treatment that prompted Aetna's payments arose prior to the date of approval of the 2010 8(i) settlement.  Continental argues in response that Dawson's interpretation of Section 2 ignores the express provision of Section 1 that Continental would receive a complete release of liability for past medical care arising out of the injury.  Instead, Continental argues that Section 2 was included in the event a need for medical treatment arose between the date the agreement was

executed and the date it was approved by the Department of Labor, the premise being that Continental would not fund the settlement, and Dawson would not have the funds to pay for medical treatment, until the agreement was approved.  Additionally, Continental argues that Dawson's interpretation of Section 2 ignores the future tense of "should arise" in relationship to Continental's future obligation.  Continental asserts that Dawson's interpretation would be more plausible if Section 2 said "will have arisen," i.e., the future perfect tense.

The Court finds the plain language of Section 2, read in conjunction with Section 1 and the other Sections of the 2010 8(i) settlement, required Continental to repay Aetna for the payments it made for Dawson.  Put simply, the Aetna bills accrued as a result of reasonable and necessary medical treatment related to Dawson's injury, and they arose prior to the date of the approval of the 2010 8(i) settlement.  This interpretation is supported by Section 1, which affords Continental a complete release of liability for Dawson's compensation and past medical care arising out of the subject injury.  *See* Def. App. 40 ¶ 1.  The parties were aware that Aetna had not been reimbursed when they entered into the 2010 8(i) settlement, and the Court finds adopting Continental's interpretation would lead to a grossly inequitable result—Continental would be given a full release of liability after only paying $126,688.31 for Dawson's medical care, and Dawson would be liable for the $282,774.51 paid by Aetna and assigned to Continental.[60]  Thus, the Court finds that Section 1 afforded Continental a full release of liability, and Section 2 ensured that Continental would pay for all reasonable and necessary medical

---

[60] The $126,688.31 includes the $78,688.31 Continental had already paid on Dawson's behalf before executing the 2010 8(i) settlement and the $50,000 it paid pursuant to Section 1 of the 2010 8(i) settlement.  *See* Def. App. 42 ("Defendants state that they have paid a total of $76,688.31 for medical care . . . ."); Def. App. 40 ¶ 1 ("Of this sum . . . $50,000 is allocated to medical care and expenses.").

treatment received by Dawson prior to the date of approval of the 2010 8(i) settlement, except for Medicare and Medicaid exclusions.[61]

The Court is not persuaded by Continental's argument that the phrase "should arise" necessitates an alternative interpretation.  The term "should" expresses the conditional. "Should." *Merriam-Webster Online Dictionary*. 2015. http://www.merriam-webster.com/dictionary/should (March 23, 2015).  Therefore, Section 2 states that *if* reasonable and necessary medical treatment related to Dawson's injury arose prior to the date of the approval of the agreement, Continental was obligated to pay for such treatment.  The medical treatment that prompted the Aetna bill payments arose prior to the date of the approval of the agreement, and both parties were aware Aetna had not been repaid; therefore, the condition triggering Continental's payment obligation was satisfied.  Although Aetna did not send a demand letter until January 7, 2011, Section 2 does not require that the Aetna *bill* arise prior to the date of approval of the agreement; rather, Section 2 provides that any reasonable and necessary medical treatment arise prior to the date of approval of the agreement.  *See* Def. App. 34 (Aetna Demand Letter).  There is no dispute that the medical treatment for which Aetna sent the demand letter arose in 2007, prior to the date of the approval of the agreement.

---

[61] The Court finds that the ordinary rules of construction leave no reasonable doubt as to the 2010 8(i) settlement's interpretation.  *See ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 842 (5th Cir. 2012) (explaining that, under Texas law, a contract is construed against its drafter only as a last resort).  Therefore, despite a comment to the contrary at the hearing, the Court does not construe the 2010 8(i) settlement against Continental by reason of Continental's purported authorship of the agreement.  *See* Hr'g Tr. at 32:22–25.  Moreover, the Court is persuaded that Continental and Dawson drafted and negotiated the 2010 8(i) settlement together.  *See Barnes v. Forest Hills Inv., Inc.*, 11 F. Supp. 2d 699, 706 (E.D. Tex. 1998) ("Construing the contractual language against the original drafter is particularly inappropriate when the agreement resulted from a volley of negotiations between two equally footed parties.").

Continental argues that it paid $76,688.31 in medical benefits in 2008 and 2009, and that if it did not receive a release of liability for the Aetna bills, then Continental received nothing for its new consideration of $50,000 for additional past medical allocated in the 2010 8(i) settlement. Dawson responds that, at the time the 2010 8(i) settlement was executed, there were significant disputes about whether Continental was liable for just past medicals or also for diminution in Dawson's earning capacity, and disability, and potential future increases in the cost of medical care.  *See* Def. App. 39–40 ("Disputed Issues").  Therefore, Dawson contends that Continental was in part bargaining for the elimination of risk of liability for those disputed issues when it allocated to Dawson $210,759.68 for indemnity and $50,000 for medical care and expenses.

The Court agrees with the Defendant.  It is clear from the face of the 2010 8(i) settlement that it was entered into as a means of resolving multiple disputed issues and eliminating the risk of future litigation.  *See* Def. App. 39–40.  Moreover, the Court finds that the $50,000 referred to in Section 1 is merely an *allocation* of medical, and not a full statement of the consideration paid by Continental or received by Dawson.[62]  The Court disagrees with Continental that it received no consideration for the $50,000 *allocated* for medical expenses.  *See Parker v. Dodge*, 98 S.W.3d 297, 301 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citation omitted) ("A court of law normally will not inquire into the adequacy of consideration supporting a contract.").  Furthermore, this is certainly not an instance in which there is an unconscionable difference in the relative values exchanged.[63]  *Id.*

---

[62] Section 1 provided that Continental would pay Dawson "a lump sum of $260,759.68 in return for a complete discharge of their liability for compensation and past medical care arising out of the subject injury."  Def. App. 40 ¶ 1.  Only $50,000 of that sum was allocated to medical care.  *Id.*  The other $210,759.68 was allocated to indemnity.

[63] If the Court were to adopt Continental's proposed construction, Dawson would have exchanged a complete release of liability for only $126,688.31 in allocated medical care from Continental.  This amount includes $76,688.31 in total medical care Continental paid before the

24

Next, Continental notes that the Longshore and Harbor Workers' Compensation Act permits a settlement to include future medical benefits if the parties so agree.  *See* 33 U.S.C. § 908(i)(1) ("Such settlement may include future medical benefits if the parties so agree."). Therefore, according to Continental, Section 2 was included to cover future medical benefits between the date the agreement was executed and its date of approval by the Department of Labor, just as Section 1 was included to cover past medical care.  Yet, the Court is obligated to recognize that Section 2 could have easily been written in a way that is clearly consistent with Continental's reasoning and the "future medical" provision of 33 U.S.C. 908(i)(1).  The parties needed only to include the modifier "future" in front of "reasonable and necessary" and change "prior" to "between."  In other words, Section 2 could have read as follows:

> Defendants further agree to provide payment for any [future] reasonable and necessary medical treatment related to the injury of November 16, 2007 incurred [between] the date of [this agreement and its approval by the OWCP].

The language of Section 2 does not unambiguously refer to medical benefits rendered in the future, and the Court is not persuaded that 33 U.S.C. § 908(i)(1) mandates Continental's interpretation of Section 2.[64]  The Court *does* construe Section 2 as requiring Continental to pay for future medical between the execution of the 2010 8(i) settlement and its approval by the Department of Labor; however, the Court *also* construes Section 2 as obligating Continental to pay for the medical treatment paid by Aetna that arose in November 2007.

---

2010 8(i) settlement, Def. App. 42 (Adequacy of Settlement), and the $50,000 allocated to medical care in Section 1.  Def. App. 40 ¶ 1.  To the extent there is inadequate consideration in the 2010 8(i) settlement, it is the consideration paid by Continental to Dawson.

[64] Continental also argues that the logical premise of Section 2 was that Continental would not fund the settlement until it was approved, and Dawson would not have the funds to pay for new medical treatment received prior to approval.  The Court rejects this argument for the same reasons it rejects Continental's 33 U.S.C. § 908(i)(1) argument—there was an easy and succinct way to write Section 2 in accordance with Continental's "logical premise," yet the parties agreed to alternative language that does not support Continental's interpretation.

Continental further argues that the release between Continental and Dawson did not release Aetna's right to make a direct claim against Continental, and Continental ultimately had to pay Aetna $219,000 to settle Aetna's claims. *See* Def. App. 101. Continental obtained the Aetna claim as part of its settlement with Aetna, and Continental now argues that Aetna's claim assigned to Continental is not precluded by the 2010 8(i) settlement. At the time Dawson and Continental settled, Continental did not own Aetna's claim.

The Court finds it unremarkable that Continental settled with Aetna separate and apart from its settlement with Dawson. This is entirely consistent with the Court's interpretation of the 2010 8(i) settlement—Continental was primarily obligated to pay for Dawson's medical treatment related to the 2007 injury, and therefore, Continental was obligated to pay Aetna for the treatment Dawson received overseas. This explains why Aetna pursued its claim against Continental before the OWCP and apparently waived its claim against Dawson. *See* Def. App. 2, 7 (Aetna was arguing before the OWCP that Aetna was entitled to reimbursement from Continental for all medical costs paid by Aetna); Def. App. 81. It is true that Continental obtained the claim from Aetna; however, because the Aetna claim was for Dawson's reasonable and necessary medical treatment that arose prior to the date of the approval of the 2010 8(i) settlement, that claim and the lien securing it embodies what Continental was already obligated to pay pursuant to the 2010 8(i) settlement.

Finally, Continental argues that the Adequacy of Settlement and Medicare Considerations Sections of the 2010 8(i) settlement protected it from future medical claims submitted by any collateral source of health insurance, such as Aetna, and Dawson stipulated that he did not have a collateral source of health insurance. According to Continental, this stipulation precludes Dawson from requiring Continental to pay the Aetna bills. This argument is unavailing for the

simple reason that Aetna was not a collateral source of health insurance.  A "collateral source" is

generally defined as a source *independent* of the tortfeasor.  *See* BLACK'S LAW DICTIONARY

(10th ed. 2014) (defining "collateral source rule").  Aetna provided health benefits to Dawson

according to the terms of the Plan, which Hill International, Inc. purchased from Aetna and

established and maintained for the purpose of providing its employees with medical benefits.

*See* Dkt. No. 14 ¶ 2.1.  Therefore, the medical payments provided by Aetna to Dawson were not

independent of the tortfeasor, Hill International, Inc., which purchased the Plan to protect

Dawson and its other employees.  Hill was also a party to the 2010 8(i) settlement.[65]  Therefore,

Dawson did not have a source of collateral health insurance when he executed the 2010 8(i)

settlement, and that clause does not require Dawson to repay Aetna.

Alternatively, Continental contends that Dawson is barred by res judicata from

challenging Continental's standing to assert the Aetna claim because Dawson was a party to the

2013 8(i) OWCP proceeding between Continental and Aetna, and Dawson did not object to

Aetna's assignment of its claim to Continental.  Dawson counters that res judicata is inapplicable

because Dawson was not involved in the 2013 8(i) OWCP proceeding when the 2013 8(i)

settlement between Aetna and Continental was entered into and approved.

"Under res judicata, a final judgment on the merits of an action precludes the parties or

their privies from relitigating issues that were or could have been raised in that action." *Allen v.*

*McCurry*, 449 U.S. 90, 94 (1980).  "Four elements must be met for a claim to be barred by res

---

[65] *See* Def. App. 37 (2010 8(i) settlement) ("The parties to this action, claimant DAVID D.
DAWSON, employer HILL INTERNATIONAL, INC., and its insurance carrier,
CONTINENTAL INSURANCE COMPANY/CNA INTERNATIONAL, (hereinafter
"Defendants") . . . ."); Def. App. 40 ("The parties [including Hill] recognize that there are
significant issues in dispute . . ."); *Id.* ¶ 1 ("*Defendants* will pay the claimant a lump sum . . . .")
(emphasis added).

judicata: '(1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases.'" *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (quoting *In re Ark–La–Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007)).

Here, the Court finds res judicata inapplicable because the parties are not identical in the two actions. First, the Court notes that "[r]es judicata applies even when an administrative agency was the venue of the first action, provided the agency acted in a judicial capacity, gave the parties sufficient opportunity to present their case, and resolved any disputed fact questions properly brought before it." *Cooper v. Int'l Offshore Servs., L.L.C.*, 390 F. App'x 347, 351 (5th Cir. 2010) (citing *Gibson v. U.S. Postal Serv.*, 380 F.3d 886, 889 (5th Cir.2004)). The 2013 8(i) proceeding resulted in an agreement between Continental and Aetna. Dawson was not a party to that agreement, and was not involved in the OWCP proceeding as of 2012, and was not a party to the 2013 8(i) settlement between Continental and Aetna. *See* Def. App. 81 (May 24, 2012 letter from Bradley Soshea, counsel for Aetna, to Chuck Martin, Claims Examiner) (stating that Dawson was no longer a party to the claim). Thus, the parties are not identical, and Dawson did not have an opportunity to challenge the propriety of the lien Aetna assigned to Continental.

In conclusion, because the Court finds the 2010 8(i) settlement unambiguously requires Continental to pay for Dawson's reasonable and necessary medical treatment that arose prior to May 24, 2010, the date of approval of the 2010 8(i) settlement, including the $282,774.51 paid by Aetna and purportedly assigned to Continental in the 2013 8(i) settlement, the Court holds that Continental's ERISA claim and breach of contract claim are barred as a matter of law. Accordingly, the Court **GRANTS** summary judgment in favor of Dawson.

**V.     Dawson's Motion to Transfer Venue to the U.S. District Court for Colorado**

Having determined that this Court has subject matter jurisdiction over this dispute and specific jurisdiction over Dawson, and that Dawson is entitled to summary judgment on Continental's claims, the Court **DENIES** Dawson's Motion to Transfer Venue as moot.[66]

<b>CONCLUSION</b>

The Court **DENIES** the following Motions filed by Defendant:  the Motion to Dismiss for Lack of Subject Matter Jurisdiction; the Motion to Dismiss for Lack of Personal Jurisdiction; the Motion to Dismiss for Improper Venue.  Having converted Defendant's Motion to Dismiss for Failure to State a Claim into a Motion for Summary Judgment, the Court **GRANTS** the Defendant's Motion for Summary Judgment.  The Court **DENIES** Plaintiff's Cross-Motion for Summary Judgment.  As a result of the foregoing, the Court **DENIES** as moot Defendant's Motion to Transfer Venue.

The Court will enter a separate judgment pursuant to Federal Rule of Civil Procedure 58(a).

**SO ORDERED**.

March 31, 2015.

BARBARA M. G. LYNN<br>
UNITED STATES DISTRICT JUDGE<br>
NORTHERN DISTRICT OF TEXAS

---

[66] The Court notes that Dawson sought to transfer this matter to the District of Colorado, where he sought relief against Continental for breach of contract and statutory and common law bad faith.  However, the District of Colorado has since dismissed Dawson's claims.  *See* Dkt. No. 48.