IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CONTINENTAL INSURACE COMPANY, AS ASSIGNEE OF AETNA LIFE INSURANCE COMPANY, OF HARTFORD, CONNECTICUT, | § § § § § | |
| Plaintiff, | § § | No. 3:13-cv-04150-M |
| v. | § § | |
| DAVID DAWSON, | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the following Motions filed by Plaintiff: a Motion for Leave to File a Second Amended Complaint (ECF No. 71), a Motion for Partial Summary Judgment (ECF No. 75), and a Motion to Dismiss Defendant's Counterclaims (ECF No. 83), which, having given notice pursuant to Fed. R. Civ. P. 12(d), the Court is treating as a motion for summary judgment (ECF No. 143). For the reasons stated below, the Motions for Summary Judgment are **GRANTED** and the Motion for Leave to File a Second Amended Complaint is **DENIED**.

I.     **Factual and Procedural Background**

On November 16, 2007, Defendant David Dawson was severely burned while working for Hill International, Inc. in Baghdad, Iraq. Fluor Intercontinental, Inc. managed Dawson's living quarters in Iraq. Hill had an employee benefit plan (the "Plan") which is governed by the Employee Retirement Income Security Act ("ERISA") and is fully insured by Aetna Life Insurance Company of Hartford, Connecticut. Plaintiff Continental Insurance Company was Hill's workers' compensation carrier, and thus was required to pay for Dawson's medical

1

expenses under the Longshore and Harbor Workers' Compensation Act ("LHWCA").[1] Aetna was the company that provided Dawson's group health insurance through Hill. Between November 18, 2007, and January 24, 2008, Aetna paid $282,774.51 in medical expenses incurred overseas on Dawson's behalf. Continental paid Dawson's subsequent medical expenses of $388,457.67. The Plan states Aetna has the right to be repaid for all benefits provided by the Plan on behalf of the covered person for injuries caused by a third party.[2]

In 2009, Dawson filed suit against Fluor in the 134th Judicial District Court of Dallas County, Texas. Both Continental and Aetna intervened in the state lawsuit, asserting liens against any settlement or judgment Dawson obtained against Fluor. In April 2010, Continental and Dawson executed a settlement agreement pursuant to § 8(i) of the LHWCA. Continental paid Dawson $260,759.68 in exchange for a complete discharge of its liability for compensation and past medical care arising out of the injury. The agreement further provided that Continental could recover from Dawson the full amount of its asserted lien of $388,457.67, if Dawson was awarded more than $2 million in the state case against Fluor. On May 24, 2010, the Department of Labor's Office of Workers' Compensation Programs ("OWCP") approved the settlement between Continental and Dawson. Dawson subsequently won a $20 million jury verdict and judgment, but Dawson entered into a confidential settlement with Fluor. At the request of the parties, the court of appeals entered a judgment setting aside the trial court's judgment and instead entered a take nothing judgment. *Fluor Intercontinental, Inc. v. Dawson*, 05-13-00209-

---

[1] The LHWCA is codified at 33 U.S.C. § 901 *et seq*.
[2] (ECF No. 52-1 at App. 62).

CV, 2014 WL 6466946 (Tex. App.—Dallas Nov. 19, 2014, no pet.).[3] Dawson has since stipulated that the settlement exceeded $2 million.

In 2012, Dawson executed an agreed judgment regarding Continental's asserted lien rights for medical benefits it paid on his behalf. He then satisfied the balance of Continental's $388,457.67 lien. On May 9, 2012, Aetna filed with the OWCP a claim against Continental, seeking reimbursement under § 8(i) for expenses it paid for Dawson's overseas medical care. The parties refer to this action as the San Francisco Longshore Proceeding ("SFLP"). Aetna and Continental eventually settled that dispute. Aetna agreed to assign the full value of its $282,774.51 lien against Dawson to Continental, and agreed to assist Continental in enforcing the Plan's subrogation and reimbursement provisions. In exchange, Continental paid Aetna $219,000. On April 23, 2013, OWCP approved the § 8(i) settlement between Aetna and Continental. Continental requested Dawson to stipulate that Aetna's subrogation interest had been properly assigned to Continental, but Dawson refused.

On October 14, 2013, Continental filed suit against Dawson in this Court, alleging claims under ERISA as a derivative fiduciary of the Plan, seeking to enforce, as an assignee, Aetna's subrogation and reimbursement rights. Continental also sought a declaratory judgment that it has an equitable lien on Dawson's recovery in the Fluor suit, and a permanent injunction prohibiting Dawson from retaining any recovery from the Fluor settlement without first reimbursing Continental. Dawson maintained that Continental could not recover as Aetna's assignee because Continental and Dawson's 2010 agreement discharged him of any further liability to Continental.

---

[3] The Dallas Court of Appeals reversed the judgment and effectuated settlement under Tex. R. App. P. 42.1(a)(2)(A), which states "In accordance with an agreement signed by the parties or their attorneys filed with the clerk, the court may render judgment effectuating the parties' agreements."

On March 31, 2015, this Court granted Dawson summary judgment on the ground that the 2010 agreement precluded Continental from recovering as Aetna's assignee. On April 6, 2016, the United States Court of Appeals for the Fifth Circuit reversed, and held that Continental could recover for subrogation and reimbursement rights assigned to it by Aetna.

Dawson then answered and counterclaimed, alleging that Continental breached its fiduciary duty under ERISA, by intentionally misrepresenting to Dawson that he owes Continental $282,774.51. Dawson also alleges Continental aided and abetted a breach of fiduciary duty by Aetna. On April 13, 2016, Continental filed a Motion for Leave to File its Second Amended Complaint, seeking to add claims for breach of contract and a claim alleging failure to reimburse it under the LHWCA (ECF No. 71). On April 22, 2016, Continental filed a Motion for Partial Summary Judgment on its declaratory judgment claim to recover its first-money lien (ECF No. 75). On May 11, 2016, Continental filed a Motion to Dismiss Dawson's Counterclaims (ECF No. 83). On September 1, 2016, the Court held a Rule 16 conference, and directed Dawson to file a proffer to explain what he hoped to prove in his counterclaims. On September 8, 2016, Dawson filed a Proffer of Proof, to which Continental responded (ECF Nos. 137, 138, 139). Because the Court is now considering the Proffer of Proof, and all other evidence in the record, the Court gave notice and converted Continental's Motion to Dismiss into a Motion for Summary Judgment (ECF No. 143).

**II.   Legal Standard**

   A.   <u>Summary Judgment</u>

Under Fed. R. Civ. P. 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is material "if its resolution could affect the outcome

of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.,* 340 F.3d 233, 235 (5th Cir. 2003). A factual dispute is "'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Crowe v. Henry,* 115 F.3d 294, 296 (5th Cir. 1997). If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the non-moving party's case." *Lynch Props.*, *Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the non-moving party and resolve all disputed factual controversies in favor of the non-moving party—but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party must allege genuine issues of fact concerning the essential components of its case. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If the non-movant has been given an opportunity to raise a genuine factual issue but the record could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). If the non-moving party fails to offer proof concerning an essential element of its case, all other facts are immaterial and no genuine issue of fact exists. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

B. Amending a Complaint

The trial court should grant leave to amend unless there is evidence of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies in previous amendments, undue

prejudice to the opposing party, or if the amendment would be futile. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003). To determine whether adding new claims would be futile, courts "apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (citations and internal quotations omitted). A futility finding is warranted if "the amended complaint would fail to state a claim upon which relief could be granted." *Id*.

**III.   Analysis**

    A.   <u>Continental's Lien and Dawson's Affirmative Defenses</u>

        i.   <u>Preemption and Colorado Law</u>

The parties do not dispute that Aetna paid $282,774.51 for Dawson's overseas medical expenses, and that as a result of the assignment from Aetna, Continental has a claim and lien against Dawson in that amount.[4] Dawson asserts two affirmative defenses: first, that under a Colorado statute, C.R.S. § 10-1-135, the lien must be offset or reduced, and second, that the lien must be offset or negated because of either Continental's breach of fiduciary duty or its aiding and abetting Aetna's breach of fiduciary duty under 29 U.S.C. § 1132(a)(3).[5] Continental argues as a matter of law that Colorado law is completely preempted by ERISA, and that neither Continental nor Aetna breached their fiduciary duties to Dawson.

ERISA contains a broad preemption provision declaring that the statute shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985) (citing 29 U.S.C. § 1144(a)). The broad preemption by ERISA is, however, qualified by 29 U.S.C. § 1144(b)(2)(A), which

---

[4] Dawson had disputed that Aetna was billed and actually paid $282,774.51 for medical treatment and expenses. However, his Proffer of Proof confirms that Continental has now disclosed documents to prove payment in that amount and that he no longer disputes it (ECF No. 137 at 4, fn.5).
[5] Dawson is a resident of Colorado.

states that nothing in ERISA "shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." *Id*. at 732–33.

There are two types of preemption that must be considered in the context of ERISA: conflict preemption and complete preemption. *See Arana v. Ochsner Health Plan*, 338 F.3d 433, 439 (5th Cir. 2003). Even if a state law is not conflict preempted because it regulates insurance, it may still be completely preempted if a claim "fall[s] within the scope of an ERISA [29 U.S.C. § 1132] remedy." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 206 (2004); *see also Arana*, 338 F.3d at 440. Dawson argues that fully insured plans, like Aetna's, are not conflict preempted by ERISA because they are subject to state laws that regulate insurance. However, Dawson does not address complete preemption.

ERISA completely preempts state law when a claim falls within the scope of 29 U.S.C. § 1132(a)(1)(B), which provides that: "a civil action may be brought—by a participant or beneficiary…to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The Fifth Circuit addressed a fact pattern similar to that found here in *Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003). There, the plan sought reimbursement for medical expenses it had paid. The plaintiff argued the health plan's subrogation and reimbursement terms violated a Louisiana statute, thereby nullifying the terms of the ERISA plan, and that, therefore he was not seeking relief under ERISA. In finding complete preemption, the Fifth Circuit held:

> Arana's [Louisiana law] claim can be fairly characterized either as a claim to recover benefits due to him under the terms of his plan or as a claim to enforce his rights under the terms of the plan. As it stands, Arana's benefits are under something of a cloud, for OHP is asserting a right to be reimbursed for the benefits it has paid for his account. It could be said, then, that although the benefits have already been paid, Arana has not fully recovered them because he has not obtained the benefits free and clear of OHP's claims. Alternatively, one could say that Arana seeks to enforce his rights under the terms of the plan, for he seeks to determine his

> entitlement to retain the benefits based on the terms of the plan…Arana does seek benefits under the terms of the plan.

338 F.3d 433, 438 (5th Cir. 2003) (internal quotations omitted). Dawson argues *Arana* is distinguishable because it did not involve an assignment and because Dawson makes his breach of fiduciary duty argument as an affirmative defense and counterclaim instead of one for declaratory judgment. The Court rejects those distinctions. An assignee steps into the shoes of the assignor and thus has the same rights as an assignor, and whether a party seeks a declaratory judgment of non-liability or is a defendant asserting defenses does not affect the substance of a preemption analysis. The Court finds no meaningful distinction between the facts of this case and those in *Arana*.[6] Dawson's counterclaim is made under ERISA, and state law as asserted by Dawson is completely preempted.

Further, even if Colorado law applied, Dawson would be unable to negate Continental's lien. He argues that he is entitled to lien negation under C.R.S. § 10-1-135(3)(a)(I), which states:

> Reimbursement or subrogation pursuant to a provision in an insurance policy, contract, or benefit plan is permitted only if the injured party has first been fully compensated for all damages arising out of the claim. Any provision in a policy, contract, or benefit plan allowing or requiring reimbursement or subrogation in circumstances in which the injured party has not been fully compensated is void as against public policy.

Although Dawson won a judgment at the trial court, the court of appeals reversed, and rendered a take-nothing final judgment against Dawson. The Colorado statute provides that "if the injured party obtains a judgment the amount of the judgment is presumed to be the amount necessary to fully compensate the injured party."[7] The settlement between Fluor and Dawson exceeded the

---

[6] Similarly, in *Richardson v. BankPlus*, a plaintiff sought to invalidate his medical insurer's subrogation right based on state law. Citing *Arana*, a district court in the Southern District of Mississippi found plaintiff was seeking relief within the scope of 29 U.S.C. § 1132(a)(1)(B), and that state law thus was completely preempted. *Richardson v. BankPlus*, 3:12-CV-248-DPJ-FKB, 2012 WL 12915409, at *2 (S.D. Miss. Sept. 24, 2012).
[7] C.R.S. § 10-1-135(3)(d)(II).

final judgment that Dawson take nothing, so the statute would treat Dawson as more than fully compensated by receipt of any money from Fluor.

Dawson faces one more barrier in his effort to negate the lien under C.R.S. § 10-1-135(4)(a)(II), which provides:

> The injured party shall notify the payer of benefits within sixty days of receipt of each recovery. The notice shall include the total amount and source of the recovery; the coverage limits applicable to any available insurance policy, contract, or benefit plan; and the amount of any costs charged to the injured party. If recovery was obtained through a settlement agreement that contains a confidentiality provision that affects the information required by this subparagraph, the confidentiality provision is unenforceable as to the disclosure of the required information.

Dawson does not dispute that he did not provide Continental or Aetna with the required notice and information within sixty days of each recovery, claiming the settlement details with Fluor are strictly confidential. However, the Colorado statute vitiates confidentiality provisions where reimbursement is sought. Dawson's position is thus untenable under Colorado law, so Dawson cannot rely on that now to negate or offset any lien he owes to Continental.

        ii.      <u>Fiduciary Duty</u>

Dawson next relies on ERISA § 1132(a)(3), which allows plan participants and beneficiaries "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or to obtain other appropriate equitable relief  i) to redress such violations or ii) to enforce any provisions of this subchapter or the terms of the plan."[8] Dawson claims Continental and Aetna's actions violate § 1104, which articulates the standard of care for fiduciaries:

> A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of: i) providing benefits to participants and their beneficiaries; and ii) defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity

---

[8] 29 U.S.C. § 1132(a)(3).

9

and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims and…in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.[9]

To support his allegation that § 1104(a) was violated, Dawson cites a letter sent during the period of the SFLP by Aetna's attorney, Bradley Soshea, to the DOL, copied to Dawson's attorney at the time, Beth Klein.[10] The letter states: "Aetna seeks reimbursement only from the DBA Employer/Carrier, and seeks no payment from Dawson."[11] Reading the entire letter, the Court concludes as a matter of law that Aetna was only stating that it would not seek reimbursement from Dawson in the SFLP. Dawson previously argued to the Fifth Circuit that Aetna had waived its ERISA right to reimbursement, because it did not seek payment from Dawson during the SFLP. *See Cont'l Ins. Co. v. Dawson*, 642 Fed. Appx. 309, 313 (5th Cir. 2016). However, the Fifth Circuit held that Aetna's conduct in the SFLP was not inconsistent with its right of reimbursement. *Id*. The Fifth Circuit concluded that the letter from Soshea covered only the SFLP. *Id*. This conclusion is supported by the fact that Aetna continued to seek enforcement of its subrogation reimbursement interest in Texas state court after it sent the letter.

The terms of the Plan and case law also undermine Dawson's argument. Aetna had a right under the Plan to pursue reimbursement for the $282,774.51 it expended. The Plan states Aetna "retains the right to repayment of the full cost of all benefits provided by this Plan on behalf of the covered person that are associated with third party injuries," and that "Aetna may proceed against any party with or without the covered person's consent.[12]

---

[9] 29 U.S.C. § 1104(a).
[10] ECF No. 85-1 at App. 36.
[11] *Id*.
[12] ECF No. 52-1 at 62.

10

Even if Aetna made in the Soshea letter a misrepresentation regarding its intentions, Dawson cites no authority to support the notion that such a misrepresentation constituted a violation of Aetna's fiduciary duties under ERISA.[13] The Fifth Circuit has not squarely addressed what an ERISA beneficiary must establish to recover for misrepresentations by a fiduciary, but it has held that to recover under an equitable estoppel theory, an ERISA beneficiary "must establish a material misrepresentation, reasonable and detrimental reliance upon the representation, and extraordinary circumstances." *Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 290 (5th Cir. 1997). In *Ince v. Aetna Health Mgmt., Inc.*, 173 F.3d 672, 676 (8th Cir. 1999), the Eighth Circuit described what an ERISA beneficiary claiming breach of fiduciary duty for a misrepresentation must prove. There, Plaintiffs alleged Aetna breached its fiduciary duties under ERISA because it made misrepresentations to plan beneficiaries. The Eighth Circuit held that ERISA's fiduciary duties do not "apply to this kind of communication between the Plan and a beneficiary who has a contractual obligation to reimburse the Plan for benefits provided…[and even if they did] plaintiffs have no evidence of materiality, detrimental reliance, or damage to support such a claim." 173 F.3d 672, 676 (8th Cir. 1999); *see also In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606, 616 (N.D. Tex. 2008) (holding a plaintiff must establish a material misrepresentation and detrimental reliance to recover for a breach of fiduciary duties under ERISA, and finding that plaintiffs had not done so). *Ince*, *Weir*, and *RadioShack* strongly suggest materiality and detrimental reliance are required in the Fifth Circuit for an ERISA beneficiary to recover for a breach of fiduciary duty.

---

[13] Dawson cites *Varity Corp. v. Howe* for the notion that a fiduciary may not lie to a plan participant. *Varity Corp. v. Howe*, 516 U.S. 489 (1996). Although the Court finds Aetna did not lie during the SFLP, *Varity Corp.* is distinguishable because Varity lied about investments, leading to employees losing benefits. Here, Aetna made payments for medical expenses and has a right under the Plan to pursue Dawson for reimbursement.

Dawson does not plead or cite any evidence of materiality or detrimental reliance. Based on the undisputed facts, the Court finds as a matter of law that the alleged misrepresentation by Aetna cited by Dawson was not material and Dawson did not detrimentally rely on it. He has never agreed that he owed $282,774.51 to Continental or Aetna, opposing that proposition vigorously at every turn. The record shows that nothing Aetna or Continental said or did ever changed Dawson's course of action. For example, Continental requested Dawson to acknowledge it had a valid assignment from Aetna, but Dawson refused. On September 25, 2013, Dawson's counsel wrote a letter to Continental's counsel, asserting he intended to file a lawsuit to declare Aetna's lien invalid.[14] Dawson identifies no other harm from Aetna's alleged misrepresentations other than that he was forced to defend this lawsuit. However, defending this lawsuit is not a legally cognizable harm with respect to the alleged misrepresentation, because Aetna, or its assignee, is within its rights to pursue reimbursement from him under the Plan.

Dawson's next affirmative defense is that any lien must be offset or negated by Continental's breach of fiduciary duty under ERISA and for its aiding and abetting Aetna's breach of fiduciary duty. Dawson alleges Aetna breached its fiduciary duty when it deceived Dawson into believing it would never exercise its ERISA right of reimbursement, and when it intentionally took steps to prevent Dawson from participating in the SFLP between Aetna and Continental, so as to conceal the terms of their agreement from him.

The parties agree Dawson did not have standing to participate in the SFLP, regardless of Aetna's actions. Dawson argues that his lack of standing is irrelevant, because Aetna breached its fiduciary duty by secretly negotiating a settlement with Continental, without involving Dawson. However, Aetna had no duty to include Dawson in any part of the SFLP. Aetna "retain[ed] the

---

[14] ECF No. 25 at App. 63-65.

right to repayment of the full cost of all benefits provided by th[e] Plan on behalf of the covered person that are associated with third party injuries," could "proceed against any party with or without the covered person's consent," and the Plan allowed Aetna to assign its rights to another party.[15] Aetna's actions are wholly consistent with its duties under ERISA, which requires it to "act in accordance with the documents and instruments governing the Plan."[16] Aetna did not conceal the agreement from Dawson; Dawson admits that the DOL approved Aetna and Continental's settlement on April 30, 2013, and that he received a courtesy copy of the settlement on May 1, 2013. Dawson could have sought to have the settlement approval reconsidered, but he did not do so.[17] The Court concludes Aetna did not breach its fiduciary duties under ERISA in making and effectuating the settlement. Because Aetna did not breach its fiduciary duty, Continental could not have aided and abetted its breach.

Dawson also claims Continental breached its fiduciary duty by knowingly misrepresenting its right to recover $282,774.51 as an assignee of Aetna, and that the lien should be negated by Colorado law.[18] However, in his Proffer of Proof, Dawson admits that Continental has proven up the lien amount. The Court has already determined that the Plan is not subject to state law defenses, but even if it were, there is no authority for the notion that Continental has a fiduciary duty to plead that its claims are subject to statutory affirmative defenses. On the contrary, Continental has a duty under § 1104(a)(1)(D) to act in accordance with the documents

---

[15] *Id.*

[16] 29 U.S.C. § 1104(a)(1)(D).

[17] ECF No. 25 at App. 93-99. Dawson was copied on the settlement letter as the claimant and as an interested party. Nothing prevented him from seeking reconsideration of approval as the claimant or as an interested party. He could have sent the DOL or the Office of the Administrative Law Judge a letter stating his position and why the settlement should be reconsidered or voided.

[18] Dawson also argues that as a part of the 2013 assignment, Aetna promised only to assist Continental in proving up its lien in the severed Aetna state court action. However, as the Fifth Circuit noted, Aetna stated it was not seeking payment from Dawson in the SFLP, but Aetna continued to seek enforcement in Texas state court, after requesting payment from Dawson on January 7, 2011. *Cont'l Ins. Co. v. Dawson*, 642 Fed. Appx. 309, 313 (5th Cir. 2016). Further, Aetna's statement does not affect Continental's fiduciary duties.

and instruments governing the Plan, by which Dawson agreed to "Pay, as the first priority, from any…source of compensation, any and all amounts due [Continental] as reimbursement for the full cost of all benefits associated with third party injuries paid by this Plan."[19]

The parties agree that Continental did not become a derivative fiduciary of the Plan until April 30, 2013, when Aetna assigned Continental the right to a first-money lien. Since then, Continental has pursued the first-money lien, as it was legally entitled to do. In doing so, Continental has not breached any fiduciary duty owed under ERISA.

Because Dawson admits Continental has proven up the value of its lien, and the Court rejects his affirmative defenses, Continental's Motion for Partial Summary Judgment is **GRANTED**.

      B.      <u>Dawson's Counterclaims</u>

Dawson's counterclaims are identical to two of his affirmative defenses: that Continental breached its fiduciary duty under ERISA and aided and abetted Aetna's breach of fiduciary duty. For the reasons stated with respect to the affirmative defenses, Continental's Motion to Dismiss Dawson's Counterclaims is **GRANTED**.

      C.      <u>Continental's Motion to Amend Its Complaint</u>

Continental also seeks to amend its complaint to add two claims. The first is a claim for breach of contract under the Plan, alleging that Dawson obtained a monetary recovery from Fluor without reimbursing the first-money interest of the Plan, and that the settlement funds are not being kept in escrow during the pendency of this litigation. However, since Continental submitted its proposed amended complaint, $282,774.51 has been put in escrow with the Clerk

---

[19] ECF No. 52-1 at App. 62.

of Court.[20] The Court has granted Continental's Motion for Partial Summary Judgment, so Continental will recover its first-money lien. Therefore, this claim is moot and adding it would be futile.

Continental also seeks to add a claim under the LHWCA, codified at 33 U.S.C. § 933, for a $219,000 lien against Dawson's recovery for the lump sum it paid Aetna in the 2013 settlement, characterizing it as an indirect payment of medical benefits on behalf of Dawson, which he must reimburse. Continental attempts to frame that payment as justifying a lien under the Plan or a workers compensation benefit it paid. The relevant portion of the 2013 settlement agreement between Continental and Aetna states:

1. [Continental] will pay Aetna a lump sum of $219,000 in return for a complete discharge of their liability for past medical care arising out of the subject injury. Of this sum, $219,000 is allocated to medical care and expenses provided by Aetna.
2. Aetna hereby assigns the full value of their lien of $282,774.51 to Continental Insurance Company/CNA International…
4. [Continental's] entitlement to the full value of Aetna's lien listed in paragraph two of the Proposed Terms of Settlement shall not be reduced by or subject to the fees and costs of Claimant's or Aetna's attorneys for work performed before any jurisdiction…
6. On payment as set forth above, [Continental is] fully and forever discharged of all liability under the [LHWCA], to or on behalf of Aetna, its agents, and assigns.[21]

The 2013 settlement agreement specifically refers to the $282,774.51 lien as an asset that is being assigned. However, the agreement only mentions the $219,000 as the amount paid by Continental for a discharge of liability, never as supporting a separate lien or as an asset. Continental cannot make Dawson liable for the $219,000 simply by describing its settlement amount as "medical care and expenses provided by Aetna." Without Aetna's assignment,

---

[20] On September 8, 2016, the Clerk of Court received $282,774.51 to hold in escrow pending the outcome of this litigation.
[21] ECF No. 25 at App. 101–04.

Continental would have no right to attempt to recover any benefits paid on Dawson's behalf, as the 2010 settlement between Continental and Dawson terminated all of Continental's other rights to a portion of Dawson's recovery from Fluor. The maximum amount Continental could recover from Dawson under the LHWCA was $388,457.67. Dawson has already paid this amount to Continental, and nothing in the 2010 settlement between Continental and Dawson, the 2013 settlement between Continental and Aetna, or the Fifth Circuit's previous decision in this case would allow Continental to increase its LHWCA lien. Continental has not stated a plausible claim on which it can be granted relief on the $219,000 separately, so adding a LHWCA claim would be futile.

### IV.   Conclusion

For the reasons stated above, Plaintiff's Motions for Summary Judgment are **GRANTED** and the Motion for Leave to File a Second Amended Complaint is **DENIED**. If Plaintiff seeks to recover reasonable attorneys' fees, it shall file a motion by April 24, 2017, stating why it is entitled to do so.

**SO ORDERED**.

March 31, 2017.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**